IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| Jesse L. Mincey, Jr., and Marilyn Davis Mincey, | ) ) ) | Case No. 02-03288-BGC-13 |
| Debtors. | ) | |
| Jesse L. Mincey, Jr., and Marilyn Davis Mincey, | ) ) ) | |
| Plaintiffs, | ) | |
| vs. | ) | A. P. No.: 05-00116-BGC |
| Booker T. Washington Insurance Company, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Background**

The Complaint for Violation of Stay Under 11 U.S.C. § 362 filed by the plaintiffs on May 13, 2005, came before the Court on October 26, 2005, for a status conference. Mr. Nicholas Christian Glenos, the attorney for the defendant, Booker T. Washington Insurance Company; and Ms. Mary Frances Fallaw, the attorney for the plaintiffs, appeared.

At that status conference, the Court noted that a Motion to Dismiss, or in the Alternative, for Summary Judgment filed on July 25, 2005, by the defendant was pending. In response, counsel agreed that: (1) the material facts relevant to the issues involved in the pending adversary proceeding were not in dispute; (2) the case should be decided on summary judgment based on whatever materials they had submitted, or might submit, in support of or in opposition to the pending summary judgment motion; and (3) a trial would be unnecessary as it would not produce any additional information for the Court.

After consultation with counsel, the Court established deadlines for submission of materials. Counsel agreed that after those deadlines passed, the Court could consider the defendant's motion, including the materials submitted by the parties.

Counsel also agreed that no additional hearing would be necessary. Accordingly, each party submitted materials. After the deadlines passed, having been extended once, the Court took the summary judgment motion under advisement.

The Court has considered: (1) the summary judgment motion along with attached exhibits; (2) the plaintiffs' written responses to the defendant's motion with attached exhibits; (3) the pleadings; (4) answers to interrogatories and admissions on file in this case; (5) additional materials submitted by the parties; (6) the record in this adversary proceeding and the record in the plaintiffs' bankruptcy case; and (7) the arguments and briefs of counsel. Based on its consideration, the Court concludes that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law.

## II. Findings of Fact

The debtor, Jesse L. Mincey, Jr., is the incorporator and president of a nonprofit corporation named King Kids Academy Inc. Both he and his co-debtor, Mrs. Marilyn Davis Mincey, are, according to their bankruptcy schedules, employed by the corporation in the conduct of its business, which is the operation of a child care facility. What other relationship, if any, Mrs. Mincey, may have to the corporation is unclear.

On July 16, 1990, King Kids acquired a parcel of real property from the defendant, Booker T. Washington Insurance Company, Inc. On February 23, 1995, the defendant sold a second parcel of real property to King Kids.

Over time, King Kids executed several promissory notes payable to the defendant. In part payment for the realty it purchased from the defendant in 1995, King Kids gave the defendant a promissory note dated February 23, 1995, in the principal amount of $250,000. The February 23, 1995, note was subsequently restated, amended, renewed and increased to $273,250.50 on May 20, 1997. In addition, on that date King Kids executed another note in favor of the defendant in the amount of $162,637.13. And on October 30, 1997, it gave the defendant an additional note for $27,500.00.

On September 1, 2000, King Kids executed a note payable to the defendant in the amount of $299,596.74. The express purpose of that note was to restate, amend, renew and increase the $273,250.50 note which it previously gave the defendant on May 20, 1997. The renewed and increased note was payable, with interest, in 359 monthly installments of $2,966.88 each.

Also on September 1, 2000, King Kids gave a separate additional note to the defendant in the amount of $193,751.55. The express purpose of that note was to consolidate and increase the amounts due under the $162,637.13 note and the $27,500 note which it gave the defendant on May 20, 1997, and October 30, 1997,

respectively. The renewed and increased consolidated note of September 1, 2000, was payable, with interest, in 239 monthly installments of $2,066.22 each.

Repayment of each and all of the notes described in the preceding paragraph was secured by mortgages on the real estate that King Kids had acquired from the defendant. In addition, all of those notes were personally guaranteed by Mr. and Mrs. Mincey.

On April 25, 2002, the Minceys filed the pending Chapter 13 case. That case was assigned Case No. 02-03288-BGC13. In the schedules filed in that case, they listed the mortgage debts owed by King Kids to the defendant, debts they were obligated to pay by virtue of their personal guarantees. In their schedule of personal property, in the category for describing "stocks and interests in incorporated and unincorporated businesses," they listed "100% King Kids Academy," to which they assigned a value of "0." They subsequently amended that amount to "$100."

In their Chapter 13 plan, they proposed to make the current payments on the mortgage debts owed by King Kids directly to the defendant. But, they proposed to pay the arrearage due on those debts, which they estimated to be around $28,000, through payments to the Chapter 13 trustee over a 60-month period.

Several days later, on May 3, 2002, as president of King Kids, Mr. Mincey filed a Chapter 11 bankruptcy petition on behalf of that corporation. The corporation's case was assigned Case No. 02-03510-BGC11.

On June 12, 2002, the defendant filed a motion to dismiss or convert the corporation's Chapter 11 case.

On June 18, 2002, the defendant filed an objection to confirmation and motion to dismiss in the Minceys' Chapter 13 case. In that pleading, the defendant contended that the debtors' proposed plan was not feasible. The pleading made reference to the similar motion pending in the King Kids reorganization case and complained that dismissal or conversion of that case was eminent. The defendant concluded that such an event would leave the Minceys without income to fund their Chapter 13 case.

In open court at a hearing in the Minceys' Chapter 13 case held on October 10, 2002, counsel for the defendant announced that he had reached an agreement with the Minceys and their attorney. Through that agreement, the defendant would withdraw its objection to confirmation and motion to dismiss in the Minceys' Chapter 13 case and that the parties would subsequently submit a written consent order memorializing their agreement.

That same date, King Kids' reorganization case was dismissed on the basis of a joint <u>Stipulation and Order of Dismissal</u> submitted by the parties. This Court adopted that stipulation and order. It reads in part:

3

1. Secured Lender has filed a Motion to Dismiss or, in the Alternative, to Convert the debtor's Chapter 11 proceeding.

2. The Debtor and Secured Lender agree to the dismissal of the Debtor's Chapter 11 proceeding.

3. In the event a future bankruptcy petition is filed by or against the debtor, the Debtor agrees that Secured lender, upon application to the Court, shall be entitled to immediate relief from the automatic stay in said proceeding.

<u>Stipulation and Order of Dismissal</u>, entered October 10, 2002, Proceeding No. 45, Case No. 02-03510-BGC-11.

The Court confirmed the Minceys' Chapter 13 plan on November 7, 2002. That confirmation required, among other things, for the trustee to pay the defendant $1,358 a month towards the mortgage arrearage owed by King Kids (due because of the Minceys' personal guarantees of the debt owed by King Kids.) It also required the Minceys, because of their personal guarantees, to make the current payments on the mortgage notes owed by King Kids directly to the defendant.

On December 16, 2002, the parties filed the promised <u>Stipulation and Order on Objection to Confirmation and Motion to Dismiss</u> in the Minceys' Chapter 13 case. That document, which was adopted and executed by this Court, reads:

Jesse L. Mincey, Jr., and Marilyn Davis Mincey (collectively, the "Debtors") and Booker T. Washington Insurance Company ("Secured Lender") hereby stipulate as follows:

1. Pursuant to a Guaranty Agreement dated September 1, 2000, executed in favor of Secured Lender, the Debtors personally guaranteed all obligations of King Kid's Academy, Inc., to Secured Lender, including, without limitation, the following:

a. Promissory Note (Consolidated, Increased and Restated), dated September 1, 2000, in the principal amount of $193,751.55;

b. Promissory Note (Amended, Restated and Increased), dated September 1, 2000, in the principal amount of $299,596.74;

c. Mortgage, Security Agreement and Assignment of Rents and Leases, recorded in the Office of the Judge of Probate of Jefferson County, Alabama, as Instrument No. 9706/1892, and subsequent amendments; and

4

        d.        Mortgage, Security Agreement and Assignment of Rents and Leases, recorded in the Office of the Judge of Probate of Jefferson County, Alabama, as Instrument No. 9706/1893, and subsequent amendments.

        The Debtors' obligations to Secured Lender under the Guaranty Agreement and the above referenced Promissory Notes and Mortgages are collectively referred to herein as the "BTW Obligations".

        2.        Secured Lender has filed an Objection to Confirmation and Motion to Dismiss in the captioned Chapter 13 case.

        3.        Secured Lender's Objection to Confirmation and Motion to Dismiss is hereby OVERRULED and DENIED based upon the terms of this Stipulation.

        4.        Secured Lender shall have an allowed claim of $52,066.01 for the Debtors' arrearage under the BTW Obligations (which figure includes Secured Lender's attorney's fees) which shall be paid via the debtor's Chapter 13 Plan (the "Arrearage Claim"). The remaining BTW Obligations will be paid outside the Debtor's Chapter 13 Plan.

        5.        In the event Debtors fail to make the payments required by their Chapter 13 Plan, or other defaults under the BTW Obligations occur in the future, then Secured Lender shall be entitled to immediate relief (i.e., future relief) from the automatic stay without further Order of this Court upon the filing of an affidavit by Secured Lender demonstrating that a default has occurred.

<u>Stipulation and Order on Objection to Confirmation and Motion to Dismiss</u> filed December 16, 2002, Proceeding No. 35, Case No. 02-03288-BGC-13.

        On May 5, 2003, the defendant filed an affidavit in the Minceys' Chapter 13 case in accordance with paragraph 5 of the December 16, 2002, <u>Stipulation and Order on Objection to Confirmation and Motion to Dismiss</u>. Proceeding No. 42, an attachment to <u>Objection to Motion to Suspend Payments; Notice of Immediate Relief from the Automatic Stay</u>. That affidavit purported to demonstrate that the Minceys had defaulted either on their plan payments or on the current mortgage payments due under the King Kids mortgages. The defendant withdrew that affidavit on July 18, 2003. Proceeding No. 48, entitled <u>Withdrawal of Objection to Motion to Suspend Payments; Notice of Immediate Relief from the Automatic Stay</u>.

        On May 5, 2004, Mr. Mincey once again filed a Chapter 11 petition for King Kids. That case was assigned Case No. 04-04419-TBB-11, and assigned to the Honorable Thomas. B. Bennett, another judge of this Court.

        The defendant responded on August 17, 2004, by filing a <u>Motion to Dismiss or, Alternatively, Motion for Relief From Automatic Stay</u> in the new Chapter 11 case.

5

Case 05-00116-BGC   Doc 40   Filed 03/02/06   Entered 03/02/06 09:11:01   Desc Main
Document   Page 5 of 16

Proceeding No. 34. The express purpose of the motion was to obtain permission to foreclose its mortgage and oust King Kids from the property.

On September 22, 2004, Judge Bennett entered an order that converted this latest King Kids Chapter 11 to Chapter 7. Proceeding No. 48. And on September 23, 2004, Judge Bennett granted the portion of the defendant's motion seeking relief from the stay. Proceeding No. 54. The case was subsequently dismissed on November 22, 2004, on motion of the Chapter 7 Trustee. Proceeding No. 60.

In accordance with Judge Bennett's order granting relief from the stay in the then Chapter 7 case, on February 4, 2005, the defendant foreclosed its mortgages on the two parcels of real estate owned by King Kids. It purchased the two parcels of property at the foreclosure sales for $306,826 and $204,555.

The defendant subsequently withdrew its claim in the Minceys' Chapter 13 case and filed an unlawful detainer action against King Kids in state court.

In response to the defendant's foreclosure on the realty owned by King Kids, the Minceys filed the present adversary proceeding. Their theory is that the defendant violated the automatic stay which arose when they filed their Chapter 13 case because it foreclosed on the property without filing the affidavit of default contemplated in the parties' joint <u>Stipulation and Order on Objection to Confirmation and Motion to Dismiss</u> filed on December 16, 2002. They also contend that items of personal property, which they own, remain on one of the parcels of realty, and that they have been prevented from recovering that personalty by the defendant.

### III. Conclusions of Law

### A. Applicable Law

### 1. The Bankruptcy Estate

Section 541(a)(1) of the Bankruptcy Code provides, in relevant part, that the filing of a bankruptcy petition creates an estate, which is comprised of, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

### 2. The Automatic Stay

Section 362(a) of the Bankruptcy Code provides, in relevant part, that the filing of a bankruptcy petition "operates as a stay" of:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

6

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

11 U.S.C. § 362(a).

### 3. Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, applicable to the proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a moving party is entitled to summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)

The framework for deciding a summary judgment motion in this Circuit is outlined in the decision of the Court of Appeals for the Eleventh Circuit in Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11th Cir. 1993). The Court has followed that framework in this proceeding.

## B. Application of the Law to the Facts

### 1. Ownership of the Real Property

The Minceys contend that by virtue of their "ownership" of King Kids, they somehow possessed a legally protected interest in the realty formerly owned by that nonprofit corporation. They conclude that by listing the realty in their Chapter 13 petition, it became part of their individual bankruptcy estate. This Court disagrees.

Even in the case of "for profit" corporations, which King Kids is not, stockholders do not own or hold any legally protected interest in a corporation's assets. Many courts have commented on this issue. Those include the following. "It is also clear that under Alabama law stockholders have no vested rights in a corporation's assets or profits until a distribution occurs." First Nat'l Bank of Birmingham v. Perfection Bedding Co., 631 F.2d 31, 33 (5th Cir. 1980)(former shareholders were not entitled to excess assets of corporation's pension fund that terminated prior to sale of stock)(interpreting Alabama law). "Stockholders do not by virtue of their stock ownership acquire a legally protected interest in the assets of the corporation of which they are stockholders." American Family Care v. Irwin, 571 So.2d 1053, 1057 (Ala. 1990). "It is firmly established by the authorities that a corporation is a distinct entity: that it is separate and distinct from is shareholders, and that the property representing its capital is vested in and owned by the corporation and not the shareholders." Warrior River Terminal Co. v. State, 257

7

Case 05-00116-BGC    Doc 40    Filed 03/02/06    Entered 03/02/06 09:11:01    Desc Main
Document      Page 7 of 16

Ala. 208, 211, 58 So.2d 100, 101 (Ala. 1952). "'The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members.'" Id. at 212, 58 So.2d at 102 (quoting Klein v. Board of Tax Supervisors, 282 U.S. 19, 24 (1930). "It is elementary that a corporation is for the most purposes an entity distinct from its stockholders. By its very nature the corporate property is vested in the corporation itself and not in the stockholders." Martin Truck Line v. Alabama Tank Lines, 261 Ala. 163, 166, 73 So.2d 756, 759 (Ala. 1954)(transfer of stock in corporation which held certificate of convenience and necessity was not a transfer of the certificate to individuals purchasing stock). See also Poff v. Hayes, 763 So.2d 234 (Ala. 2000)(individual shareholder was not entitled to prosecute claim alleging trespass to chattels that belonged to the corporation in which he was a shareholder).

Writing for the Alabama Supreme Court in Pinkerton v. Pinkerton, 548 So.2d 449 (Ala. 1989), Justice Henry Steagall explained:

> Defendants, in support of their argument, contend that shareholders in Alabama are "the equitable owners of corporate assets, including real property, to the extent of their interest," citing American Cast Iron Pipe Co. v. Commerce & Industry Ins. Co., 481 So.2d 892, 896 (Ala. 1985), and thus they argue that as heirs of J.S. Pinkerton they were the equitable owners of the property in question. However, their argument is true only to the extent that the shareholder, through its voting rights, has "ultimate control over the corporation ... to elect directors." 481 So.2d at 896. This Court has stated:
>
>> "Indeed, the corporate asset[s] ... [are] equitabl[y] owned by the shareholders in the proportion that their shares bear to the total outstanding shares in the corporation."
>
> Tomaras v. Papadeas, 358 So.2d 428, 430 (Ala. 1978)(citations omitted). It is true that shareholders are the equitable owners of the corporate assets; however, the following has long been the rule in Alabama:
>
>> "It is elementary that a corporation is for the most purposes an entity distinct from its stockholders. By its very nature the corporate property is vested in the corporation itself and not in the stockholders."
>
> Martin Truck Line, Inc. v. Alabama Tank Lines, Inc., 261 Ala. 163, 166, 73 So.2d 756, 759 (Ala. 1954). It follows, then, that an equitable owner has only a voting interest in relation to corporate assets, and not an ownership interest, which is vested solely in the corporation.

Id. at 450-51 (although descendants of corporate shareholder held as tenants in common those shares of stock formerly owned by shareholder, they were not tenants in common as to the assets of the corporation).

A claim of ownership of corporate assets by the members of a <u>nonprofit corporation</u>, such as King Kids, is even more tenuous. A nonprofit corporation, unlike a "for profit" corporation, cannot have or issue shares of stock. See Code of Ala., 1975, § 10-3A-44. And it does not have stockholders. Instead, it may have "members." See Code of Ala., 1975, § 10-3A-26. But those members may receive no dividend from the corporation nor any distribution of any part of its income or profit. Code of Ala., 1975, § 10-3A-44.

With respect to any other rights or interests in the nonprofit corporation's property, its members would appear to possess nothing more than the mere possibility of receiving a distribution upon dissolution or final liquidation of whatever assets remain after payment of all liabilities and obligations of the corporation <u>if</u> the articles of incorporation, bylaws, or plan of dissolution ultimately adopted provide for them to receive such a distribution. See Code of Ala., 1975, §§ 10-3A-44 & 10-3A-141.

In any event, even prior to the enactment of the statutes referred to in the preceding paragraph, the Alabama Supreme Court concluded that the members of a nonprofit corporation possess no greater interest in or claim to its assets than do the shareholders of a "for profit" corporation. <u>Opinion of the Justices</u>, 373 So.2d 293, 296 (Ala. 1979). So even if the Minceys were members of King Kids, they would have no legally protected ownership interest in its property, including the realty foreclosed on by the defendant.

But, the Minceys are not even "members" of King Kids. In fact, according to its articles of incorporation, it has no members. That document reads in part, "The corporation is to have no members." <u>Articles of Incorporation of King Kids Academy, Inc., a Non-Profit Corporation</u>, attached as an exhibit to <u>Booker T. Washington Insurance Company's Submission in Support of Motion for Summary Judgment</u> filed November 3, 2005, Adversary Proceeding No. 05-00116-BGC. Consequently, there is no foundation in either law or fact to support the Minceys' claims of "owning" King Kids, and having an interest in the realty formerly owned by King Kids, which was foreclosed on by the defendant.

Notwithstanding the above, the Minceys contend that they had a "possessory interest" in the realty owned by King Kids. They argue that their "possessory interest" was protected by the automatic stay in their Chapter 13 case. And they conclude that the unlawful detainer case filed against King Kids in state court by the defendant violated the stay because it would result in their dispossession from the property.

The Minceys do not offer any legal support of their "possessory interest" position and this Court is not aware of any. The simple fact is that, according to the Minceys'

own allegations, they are not named as defendants in the state court suit. And it is apparent from those allegations and the other evidence before this Court that the defendant could not have filed the unlawful detainer action until after foreclosure, which did not occur until after the Minceys filed their Chapter 13 case. Consequently, as a matter of law, the defendant's unlawful detainer action against the corporation resulted in no violation of section 362(a)(1) in the Minceys' Chapter 13 case.

Moreover, the Minceys do not have any legally recognizable or protected "possessory interest" in the realty formerly owned by the corporation. That realty was owned by the corporation and not the Minceys. It was the corporation, therefore, and not the Minceys, which, prior to foreclosure, held the right to possess, or held a "possessory interest," in the property. The Minceys merely occupied the property as part of their duties as employees of the corporation. One's mere physical presence on real property as an employee of the property's owner does not give rise to a "possessory interest" in it. Consequently, the Minceys had no "possessory interest" in the realty formerly owned by King Kids.

Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay "of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before ..." the filing of the petition. 11 U.S.C. § 362(a)(1). Therefore, as a matter of law, the defendant's unlawful detainer action against the corporation resulted in no violation of either section 362(a)(3), or section 362(a)(4), or section 362(a)(5) in the Minceys' Chapter 13 case through any alleged "possessory interest" held by them in the realty formerly owned by the corporation.

In conclusion, when the Minceys filed their Chapter 13 case, the real property, which secured the defendant's debts, belonged to King Kids, a nonprofit corporation, not the Minceys. When the defendant foreclosed on that same property, the property belonged to King Kids, not the Minceys. At neither time, and at no point in between, did either of the Minceys' personally own any interest in that realty. As such, the disputed realty never constituted either "property of the [Minceys'] estate" for purposes of sections 362(a)(3) and 362(a)(4) or "property of the debtor" for purposes of section 362(a)(5). Therefore, when the Minceys filed their Chapter 13 petition, that filing did not "operate as a stay" of any act taken by the defendant to obtain possession of the realty, or to exercise control over the realty, or to enforce its mortgage lien against the realty. Therefore, the defendant's actions in foreclosing its mortgages on the realty and seeking to obtain possession of the same through an unlawful detainer proceeding filed against the corporation, were not stayed by the filing of the Minceys' personal Chapter 13 petition. Consequently, the defendant's actions did not violate or otherwise constitute a violation of the automatic stay which arose as a consequence of that filing.

10

## 2. The December 16, 2002, Stipulation

The Minceys also argue that the parties' joint <u>Stipulation and Order on Objection to Confirmation and Motion to Dismiss</u> filed on December 16, 2002, extended the automatic stay in their case to the realty owned by King Kids. This Court is not aware of any legal support which permits the extension by agreement of an automatic stay to property and mortgages not covered by the stay when a bankruptcy case was filed. Moreover, the stipulation, by its plain terms, does not purport to extend the stay in the Minceys' individual case either to the realty owned by King Kids or to the mortgages held by the defendant on that realty. In fact, it does not mention the realty at all and only mentions the mortgages in describing what obligations of the corporation had been personally guaranteed by the Minceys. No basis exists, therefore, in either fact or law, for determining that the December 16, 2002, stipulation did anything more than what it purported to do. That purpose was to deny the defendant's then pending objection to the confirmation of the Minceys' plan and motion to dismiss their case, upon the condition that the defendant would have the right to proceed outside of bankruptcy against them personally on their guarantees of the corporation's debt, upon any future default by them in performing the obligations which they had guaranteed.

### a. Relief from the Stay in the Chapter 7 Case

But assuming the Minceys are correct and the December 16, 2002, stipulation was intended to accomplish what the Minceys' now contend that it accomplished, the defendant did not, as a matter of law, violate the stay because it obtained relief from the stay to pursue the corporation's realty and the mortgages held by the defendant on that realty.

When Mr. Mincey filed a Chapter 11 petition for King Kids on May 5, 2004, the realty owned by the corporation became part of the estate in the corporation's case. And the defendant's mortgages became subject to the automatic stay which arose as a result of the filing of that case. Jurisdiction over that realty, and those mortgages, and any stay applicable to the same, then resided with the judge in that case, and no longer with the judge in this case, assuming that it ever did. It was, at that point and beyond, for Judge Bennett to determine whether, and to what extent, the stay would continue as to the realty and the mortgages on the same. Therefore, after Judge Bennett granted the defendant's motion for relief from the stay, the defendant's actions in foreclosing its mortgages and filing an unlawful detainer action against King Kids, (which actions are referred to as stay violations in the Minceys' complaint in this case), did not violate the stay as a matter of law. The defendant had been relieved from the stay by Judge Bennett, who at that time had the exclusive right to determine whether or not the defendant was entitled to relief from the stay with respect to the realty owned by King Kids and the defendant's mortgages on that realty.

Moreover, Judge Bennett's September 23, 2004, order entered in the converted Chapter 7 corporate case granting the defendant's motion for relief from the stay,

11

necessarily constituted an adjudication that any conditions precedent to the defendant's right to obtain relief from the stay and to foreclose its mortgages and secure possession of the realty, had been fulfilled. Those precedents would have necessarily included the provisions in the parties' December 16, 2002, stipulation filed in the Minceys' Chapter 13 case. If that were not correct, and Judge Bennett had not made that determination, he could not, according to the Minceys' theory, have granted the defendant relief from the stay.

As such, Judge Bennett's determination that the defendant was entitled to relief from the stay precludes this member of the Court, by way of <u>res judicata</u>, or claim preclusion, from revisiting in this adversary proceeding the facts and issues that were necessarily decided and resolved in route to that determination. <u>Borg-Warner Acceptance Corp. v. Hall</u>, 685 F.2d 1306, 1309 (11th Cir. 1982)(bankruptcy court's order denying creditor's motion for relief from the stay was a final, appealable order which would be <u>res judicata</u> as to any subsequent attempt by the creditor to obtain possession of the property involved from the debtors).

### b. Waiver of the Stipulation

But again assuming that the December 16, 2002, stipulation was intended to accomplish what the Minceys' now contend that it accomplished, for two reasons, this Court finds that the Minceys renounced, repudiated, abandoned, and waived the requirements of that stipulation. First, by filing the second reorganization case for King Kids, the Minceys voluntarily submitted the issues of defendant's right to obtain relief from the stay and foreclose its mortgages to another member of this Court, who then acquired actual and sole jurisdiction to decide and resolve those issues. Second, the Minceys renounced, repudiated, abandoned, and waived the requirements of that stipulation by standing silently by while the defendant foreclosed its mortgages. They did not make any effort to inform this Court of the impending foreclosures or to have this Court intercede to stop those foreclosures, despite their knowledge of the motion for relief filed by the defendant in the corporation's case, and of Judge Bennett's order granting that motion, and of the defendant's impending foreclosures.

Many courts have commented on this issue. Those include the following. "[W]here the acts and conduct of one party are inconsistent with the existence of a contract and are acquiesced in by the other, such contract will be treated as abandoned or rescinded." <u>Henderson v. Winkler</u>, 454 So.2d 1358, 1361 (Ala. 1984). "[W]aiver occurs when one in possession of any right, whether arising out of law or contract, with full knowledge of the material facts, performs an act which is inconsistent with the right or his intention to rely upon the right." <u>Weisbart & Co. v. First Nat'l Bank of Dalhart, Texas</u>, 568 F.2d 391, 396 (5th Cir. 1978). See, e.g., <u>Wolfson v. Equine Capital Corp. (In re Wolfson)</u>, 56 F.3d 52 (11th Cir. 1995)(secured creditor waived right to object to non-dischargeability of debt resulting from debtor's sale of collateral out of trust, where creditor knew that debtor was selling collateral and using proceeds to pay general operating expenses but creditor did not object or otherwise do anything to protect its

12

interests in the collateral); Dooley v. Weil (In re Garfinkle), 672 F.2d 1340 (11th Cir. 1982)(purchaser from bankruptcy trustee, by silence regarding reservations pertaining to order authorizing sale, and failure to object to entry of order, waived right to withdraw from sale without forfeiting its deposit based on alleged defects known to seller prior to entry of order).

     As discussed above, Mr. Mincey entered into an agreement with the defendant on October 10, 2002, on behalf of King Kids in the corporation's first reorganization case (Bankruptcy Case No. 02-03510-BGC11). That agreement provided, "In the event a future bankruptcy petition is filed by or against the debtor, the Debtor agrees that Secured lender, upon application to the Court, shall be entitled to immediate relief from the automatic stay in said proceeding." Stipulation and Order of Dismissal, entered October 10, 2002, Proceeding No. 45, Case No. 02-03510-BGC-11. The Minceys argue now that the December 16, 2002, stipulation must be enforced but that the October 10, 2002, stipulation should be disregarded. This Court disagrees.

     The October 10, 2002, stipulation was filed on the same date that the parties announced in open court that they had arrived at the agreement which formed the basis of the December 16, 2002, stipulation that was subsequently entered in the Minceys' individual case. Because those two agreements were reached on the same day between the same parties, and involved the same debts, albeit from two different perspectives, neither can be considered in a vacuum without reference to one another. They are both clearly part of an agreement entered into between the parties in an attempt to resolve all of the issues which existed between them at the time. Integral to that agreement was Mr. Minceys' stipulation in the corporation's case that the defendant's right to enforce its mortgages on the realty would no longer be stayed if he chose to file another Chapter 11 case on behalf of the corporation. By filing the corporation's second case, Mr. Mincey clearly evinced his intent to abandon and waive the December 16, 2002, stipulation, since he knew that by filing the corporation's second case, the defendant would become entitled to enforce its mortgages on the realty, if it chose to do so, as a result of the October 10, 2002, stipulation.

     For the foregoing reasons, by filing the corporation's second case and standing silently by while the defendant foreclosed on the corporation's realty, the Minceys unequivocally abandoned, repudiated, and waived the December 16, 2002, stipulation. The abandonment, repudiation and waiver was complete when the defendant acquiesced in it and relied on it by obtaining relief from the stay in that case, foreclosing its mortgages on the realty, and instituting an unlawful detainer action to rest possession of the property from the corporation. And since the Minceys abandoned, repudiated, and waived the stipulation, they cannot now insist on its enforcement or otherwise rely on it by complaining in the present adversary proceeding that the defendant's failure to abide by it constituted a violation of the stay in their individual case.

Some of the courts commenting on this issue include the following. "The general rule is that the right of a person to specific performance of his contract may be lost by his abandonment thereof, by his acquiescence in a breach of it, or by conduct inconsistent with the right to relief, which amounts to a waiver or an estoppel." Henderson v. Winkler, 454 So.2d at 1361-1362. "Where the parties have by mutual agreement rescinded a contract, one of the parties thereto cannot recover damages in an action for breach of contract." Id. at 1362. "Once a repudiation of the contract is made, the nonrepudiating party is relieved from performing any further contractual obligations." HealthSouth Rehabilitation Corp. v. Falcon Management Co., 799 So.2d 177, 182-183 (Ala. 2001).

As indicated before, the Minceys could have asked Judge Bennett to consider the issue of the defendant's purported failure to satisfy the December 16, 2002, stipulation. He had jurisdiction over the realty owned by King Kids and the defendant's mortgages on that realty. But they did not.

### c. Estoppel

Similarly, the Minceys cannot profit from their failure to raise the issue before Judge Bennett. They stood aside and allowed the defendant to obtain relief from the stay from Judge Bennett and then, after the defendant acted in reliance on Judge Bennett's order, filed the present adversary proceeding based on the defendant's technical failure to file the affidavit referred to in the December 16, 2002, stipulation. From their receipt of the motion for relief filed by the defendant in the corporation's second case, and of Judge Bennett's order granting that motion, and of the notices of foreclosure that they undoubtedly received from the defendant outside of bankruptcy, the Minceys knew that the defendant was under the impression that it was entitled to foreclose its mortgages and obtain possession of the realty owned by King Kids. In contrast, they made no effort to inform this Court of the pending foreclosures or to have this Court intercede to stop those foreclosures. Under those circumstances, even assuming that the December 16, 2002, stipulation was intended to accomplish what the Minceys' now contend that it accomplished, they are equitably estopped from raising, in this adversary proceeding, the defendant's technical failure to file the affidavit referred to in the stipulation as a basis for a section 362(h) cause of action.

Writing for the Court in Dooley v. Weil (In re Garfinkle), 672 F.2d 1340 (11th Cir. 1982), Circuit Judge Harrington Wood, Jr., explained, "Estoppel requires (1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." Id. at 1347. The Minceys willfully or negligently stood aside and allowed the defendant to obtain relief from the stay and foreclose on the realty. The Minceys did not oppose the motion for relief in the corporation's second case, even though they now claim that they had a meritorious defense to that motion. The Minceys acknowledged the validity of Judge Bennett's order by not appealing it or voicing

14

opposition to the defendant's scheduled foreclosure of the realty. And the Minceys failed to voice any opposition in their individual case to the impending foreclosures. Consequently, the Court finds that Minceys will be estopped in this proceeding from claiming that the acts of the defendant constituted violations of the stay in any case.

### d. Affidavit of Default

But again, assuming the Minceys are correct, this Court could find that the defendant satisfied the requirement to file an affidavit of default. The requirement in the stipulation that the defendant file an affidavit before proceeding against the Minceys personally was technical in nature. It was ostensibly designed to give the Minceys' notice of the defendant's intent to pursue them individually outside of bankruptcy on their guarantees. Or, rather, according to the Minceys, it was designed to give them notice of the defendant's intent to foreclose its mortgages on the realty owned by King Kids. The parties involved in the Minceys' individual case are the same as those involved in the King Kids' corporate case. Therefore, the relief from the stay motion filed by the defendant in the corporation's case served just as well to notify the Minceys that it intended to foreclose its mortgages on the realty owned by King Kids, as would have an affidavit filed in their personal bankruptcy case. In addition, Judge Bennett's order granting the defendant relief from the stay provided the Minceys with ample notice of the defendant's intentions with regard to foreclosing its mortgages. The "affidavit requirement" of the stipulation was, therefore, substantially performed. Consequently, the defendant's subsequent foreclosure of its mortgages and institution of an unlawful detainer against the corporation did not violate the stay in the Minceys' Chapter 13 case, even assuming that the December 16, 2002, stipulation was intended to accomplish what the Minceys' now contend that it accomplished.

### 3. Personal Property

The stay was not violated by the defendant allegedly exercising control over, or preventing the Minceys from exercising control over, personal property owned by them which allegedly remains in a building located on one of the parcels of realty that was foreclosed by the defendant. In Count 2 of their complaint, as amended, the Minceys allege that, upon foreclosing its mortgages, the defendant placed locks on the building that occupies one of the parcels of realty that formerly belonged to King Kids, which is referred to as the "Airport Property;" that items of personalty belonging to them are located in the building; and that the locks have prevented them from obtaining possession of those items. Plaintiffs' Amendment to Complaint for Violation of Stay Under 11 U.S.C. § 362 attached to Motion to Amend Complaint filed in Adversary Proceeding No. 05-00116-BGC on July 15, 2005.

In an affidavit filed by the defendant in support of its motion, the affiant, Mr. Josie D. Skanes, the Senior Vice-President of Administration for the defendant, represented that the defendant did not know that personalty belonging to the Minceys was in the building when it foreclosed on the property; that the defendant first learned of the

15

Case 05-00116-BGC    Doc 40    Filed 03/02/06    Entered 03/02/06 09:11:01    Desc Main
Document    Page 15 of 16

Minceys' claim that they own personalty which is locked in the building when they filed the amendment to their complaint that contains the allegations relating to that personalty; and that upon receipt of that amendment, the defendant, through counsel, provided the Minceys with the opportunity to retrieve their personalty from the building. <u>Affidavit of Josie D. Skanes</u> attached to <u>Response to Motion to Amend Complaint</u> filed in Adversary Proceeding No. 05-00116-BGC on August 9, 2005.

No affidavit was filed in response. Moreover, in their answers to the defendant's request for admissions, the Minceys admitted that they, "have never been told by anyone on behalf of the [defendant] that they cannot recover property belonging to them from Airport Road." <u>Plaintiffs' Response to Request for Admissions</u> filed August 24, 2005, Adversary Proceeding No. 05-00116-BGC. Since that evidence reflects that the defendant has not denied the Minceys access to their personalty, it must be concluded, as a matter of law, that no stay violation occurred there.

## IV. Conclusion

The Court has considered all pleadings, affidavits, exhibits, memorandum, answers to interrogatories, admissions, and other materials submitted by the parties. It has, moreover, resolved all reasonable doubts about the facts contained in those documents in favor of the plaintiffs and has drawn all justifiable inferences from those facts in the plaintiffs' favor. Nevertheless, the Court finds that there are no genuine issues as to any material facts and that the defendant is entitled, under Rule 56(c) of the Federal Rules of Civil Procedure, applicable to this matter through Rule 7056 of the Federal Rules of Bankruptcy Procedure, to judgment as a matter of law.

An order will be entered contemporaneously with this Memorandum Opinion.

Dated: March 2, 2006 /s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

cc: Mr. Nicholas Christian Glenos, Attorney
Ms. Mary Frances Fallaw, Attorney